# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| 1025 W. ADDISON STREET APARTMENTS OWNER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GRUPO CINEMEX, S.A. DE C.V.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 20-cv-06811
Hon. Marvin E. Aspen

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us are Defendant Grupo Cinemex, S.A. de C.V.'s motion to dismiss for improper service and lack of personal jurisdiction, motion to quash service of process, and motion to set aside default judgment. (Motion to Dismiss ("MTD") (Dkt. No. 24); Motion to Quash Service of Process and Set Aside Default Judgment ("Mot. to Quash") (Dkt. Nos. 16, 17).) For the reasons that follow, the motion to dismiss is denied, the motion to quash service is denied, and the motion to set aside default judgment is granted.

## FACTUAL BACKGROUND

The facts set forth below are taken from the Complaint and are assumed true for purposes of Defendant's Rule 12 motions. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

On November 17, 2020, Plaintiff sued Defendant Grupo Cinemex, S.A. de C.V. ("Defendant" or "Grupo Cinemex") for breach of contract to recover money on a guaranty. (Complaint ("Compl.") (Dkt. No. 1), ¶ 1.) Plaintiff is a Delaware limited liability company with its principal place of business in Chicago, Illinois. (*Id.* ¶ 6.) Plaintiff is the owner, operator, and

lessor of a mixed-use real estate development located at 1025 West Addison Street in Chicago's Wrigleyville neighborhood ("the Wrigleyville Project"). (*Id.* ¶ 1.) Defendant is a *sociedad anònima de capital variable* (S.A. de C.V.) organized and existing under the laws of Mexico, with its principal place of business in Mexico City, Mexico. (*Id.* ¶ 7.) Defendant, through its subsidiaries and affiliates, owns and operates movie theaters in both Mexico and the United States. (*Id.* ¶¶ 7, 15.) Defendant expanded into the United States in 2015 through various subsidiaries, operating generally under the trade name "CMX." (*Id.*) By 2017, Defendant controlled approximately 30 movie theaters in the United States. (*Id.*)

In 2018, Plaintiff completed construction of the Wrigleyville Project. (*Id.* ¶ 6.) Plaintiff leased approximately 30,000 square feet of commercial space in the Wrigleyville Project to Cinemex Addison, LLC ("Cinemex Addison"), an owner/operator of movie theaters, for an initial 10-year period. (*Id.* at ¶¶ 1, 2, 13.) Cinemex Addison planned to operate a dine-in movie theater in the Wrigleyville Project. (*Id.* ¶¶ 2, 13.) Cinemex Addison amended its lease one time to change the identity of the lessee to Cinemex IL, LLC. (*Id.* ¶¶ 2, 16.) At a later date, CB Theater Experience LLC ("CB Theater") was designated as the lessee and movie theater operator under the 10-year lease (the "Lease") with Plaintiff. (*Id.* ¶¶ 2, 18.) At all relevant times, Defendant directed and controlled each lessee, including CB Theater, including for purposes of negotiating and executing the Lease and amendments thereto. (*Id.* ¶ 2.) Defendant is the ultimate parent company of, and controls, both Cinemex Addison and CB Theater. (*Id.* ¶¶ 2, 7, 15.)

Pursuant to an agreement dated July 17, 2016 (the "Guaranty"), Defendant guaranteed all the obligations of the lessee under the Lease. (*Id.* ¶¶ 3, 14, Ex. A (Corrected) at 80–85 (Dkt. No. 11)).) The Guaranty fully incorporates the Lease, and Defendant, as the guarantor, "absolutely

and unconditionally guarantees the full and timely performance of each and all of terms, covenants and conditions of the Lease . . . ." (*Id.* ¶¶ 3, 46, 48; Ex. A (Corrected) at 83.) Paragraph 26.9 of the Lease states that "[t]he laws of the State of Illinois shall govern this Lease and any action brought to enforce this Lease or otherwise arising out of the transactions hereunder shall be brought exclusively in Cook County, Illinois." (Compl. ¶ 3; Ex. A (Corrected) at 40.) On February 17, 2017, Defendant executed an "Acknowledgment and Reconfirmation of Guaranty by Guarantor," through which it reconfirmed that the Guaranty remained "in full force and effect." (Compl. ¶ 17, Ex. B at 4.) On February 8, 2019, after CB Theater became the lessee under the Lease, Defendant executed a "Guarantor Confirmation and Consent," confirming that it "will continue to be liable under the terms of the Guaranty." (*Id.* ¶ 18, Ex. C at 9.) Defendant again confirmed its liability under the Guaranty via a November 7, 2019 agreement. (*Id.* ¶ 19, Ex. D at 4.)

In April 2020, CB Theater filed a voluntary petition for bankruptcy with the United States Bankruptcy Court for the Southern District of Florida for relief under Chapter 11 of the Bankruptcy Code. (*Id.* ¶¶ 4, 22.) Plaintiff's Complaint here alleges that CB Theater rejected its Lease at the Wrigleyville Project in the Chapter 11 action and has materially breached its obligations under the Lease. (*Id.* ¶¶ 4, 24, 26.) Defendant, as the guarantor, has not filed for bankruptcy, and the Guaranty is unchanged by CB Theater's bankruptcy filing. (*Id.* ¶¶ 4, 33–35, Ex. A (Corrected) at 81.) The Guaranty also states that Defendant's liability is "primary," such that Plaintiff may proceed against Defendant, as the guarantor, without first suing CB Theater. (*Id.* ¶ 36, Ex. A (Corrected) at 81.) Plaintiff's Complaint alleges that Defendant's refusal to perform its obligations under the Guaranty constitutes a material breach of contract. (*Id.* ¶¶ 42, 50.)

## PROCEDURAL HISTORY

Plaintiff filed its Complaint on November 17, 2020. (Compl.) A summons for Defendant was returned executed by Amanda Diaz, a legal secretary for CB Theater, on December 23, 2020. (Dkt. No. 8.) Defendant's answer was due by January 13, 2021. (Dkt. No. 8.) Defendant did not respond to the Complaint by that date, so, on January 25, 2021, we entered default judgment against Defendant, and directed that it could file a motion to reconsider within 30 days. (Dkt. No. 9.) On January 28, 2021, a summons for Defendant was returned executed, signed for by Luis Castelazo Tarasco, a secretary for CB Theater. (Dkt. No. 10.) On February 12, 2021, Defendant's counsel filed appearances. (Dkt. Nos. 13, 14.)

On February 15, 2021, Defendant filed a combined motion to quash service of process and set aside the default judgment. (Mot. to Quash (Dkt. No. 16).) The motion to quash argues that service was improper because the two secretaries who executed the summonses are not employed by or affiliated with Defendant. (*Id.* ¶ 6.) Ten days later, Plaintiff filed a response in opposition to the motion to quash and set aside the default judgment. (Response to Mot. to Quash ("Resp. to Mot. to Quash") (Dkt. No. 19).) Plaintiff also filed a motion, in the alternative, for alternate service under Federal Rule of Civil Procedure 4(f) to serve Defendant's counsel of record. (Motion for Alternate Service Pursuant to FRCP 4(f)(3) (Dkt. Nos. 19, 20).) On February 26, 2021, we granted the motion for alternate service. (Dkt. No. 21.) That same day, Plaintiff served the summons and Complaint by email and courier on Defendant's U.S.-based counsel, and the summons was returned executed. (Dkt. No. 22.) Still, Defendant filed a reply in support of its pending motion to quash on March 18, 2021. (Reply in Support of Motion to Quash (Dkt. No. 23).) Also on March 18, 2021, Defendant filed a Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction. (MTD.) Plaintiff filed a response to the

Motion to Dismiss on April 12, 2021 (Response to Motion to Dismiss ("Resp. to MTD") (Dkt. 29)), and Defendant replied on April 30, 2021 (Reply in Support of Motion to Dismiss (Dkt. 30)).

**LEGAL STANDARD**

I. **Defendant's Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction**

A. **Motions Under Rule 12(b)(2)**

A Rule 12(b)(2) motion to dismiss "tests whether a federal court has personal jurisdiction over a defendant." *MOLD-A-RAMA Inc. v. Collector-Concierge-Int'l*, 451 F. Supp. 3d 881, 884 (N.D. Ill. 2020) (quoting *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill. 2015)). If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). We may consider affidavits or other evidence in opposition to or in support of its exercise of jurisdiction. *Purdue Research*, 338 F.3d at 783. We resolve factual disputes in the plaintiff's favor, but unrefuted assertions by the defendant will be accepted as true. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009); *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1061 (N.D. Ill. 2008).

We "may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with [Illinois] such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice.'" *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)); *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690, 696 (N.D. Ill. 2002). A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Illinois "permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

Jurisdiction can be either general or specific. A defendant with "continuous and systematic" contacts with a state is subject to general jurisdiction in that state in any lawsuit, even if the lawsuit is unrelated to those contacts. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S. Ct. 1868, 1872–73 (1984); *Purdue Research Found.*, 338 F.3d at 787 n.16 (discussing how the threshold for exercising general jurisdiction over a defendant is high such that the contacts must be extensive and pervasive). Specific jurisdiction is "case-linked." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)). Courts may exercise specific jurisdiction "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi. v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010).

In "a breach of contract case, it is only the 'dealings between the parties *in regard to the disputed contract*' that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel,*

107 F.3d 1272, 1278 (7th Cir. 1997) (internal citations omitted).  Of course, "a contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (internal citation omitted); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) ("[S]imply contracting with a party based in Illinois is also not enough to establish the required minimum contacts for personal jurisdiction").  Likewise, a defendant is not subject to jurisdiction solely because the plaintiff suffered injury in the forum state. *Advanced Tactical Ordinance Sys. v. Real Action Paintball*, 751 F.3d 796, 802 (7th Cir. 2014).

In any event, "[o]nly proper service vests a district court with personal jurisdiction over a defendant." *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 1:19-cv-02648, 2021 WL 1536173, at *3 (N.D. Ill. Apr. 19, 2021) (internal citation omitted).  Even where minimum contacts exist, "[i]mproper service destroys a court's personal jurisdiction, making any judgment or order issued against the improperly served party void." *Dugan v. Spivey Indus., Inc.*, No. 00-c-3544, 2002 WL 398509, at *2 (N.D. Ill. Mar. 14, 2002) (citing *Trs. of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.,* 126 F.R.D. 48, 50 (N.D. Ill.1989)).

Notably, "personal jurisdiction is waivable" and "parties can, through forum selection clauses and the like, contract around" it. *TruServ Corp.*, 419 F.3d at 589 (quoting *RAR, Inc.*, 107 F.3d at 1280).  "Waiving objections to personal jurisdiction via a valid forum selection provision renders any examination of the defendant's contacts with the forum state unnecessary." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011).  A "valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Heller Fin., Inc. v. Midwhey Powder Co*., 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182 n.14 (1985)).

**B. Motions Under Rule 12(b)(5)**

A Rule 12(b)(5) motion to dismiss tests the sufficiency of service of process. *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016); *Rosen v. Mystery Method, Inc.*, No. 07-c-5727, 2008 WL 410642, at *2 (N.D. Ill. Feb. 13, 2008) (collecting cases). When a defendant contests the sufficiency of service under Rule 12(b)(5), the plaintiff bears the burden to prove that the defendant was properly served. *Strabala*, 318 F.R.D. at 114 (citing *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011)). The plaintiff must provide "competent proof" showing proper service, or "proof to a reasonable probability that jurisdiction exists." *Rosen*, 2008 WL 410642, at *2 (citing *Target Mkt. Publ'g, Inc. v. ADVO, Inc.,* 136 F.3d 1139, 1142 (7th Cir.1998)). Therefore, in considering a Rule 12(b)(5) motion, we may look outside the pleadings, but must ultimately view the facts in the light most favorable to the plaintiff. *United States v. Park*, 389 F. Supp. 3d 561, 567 (N.D. Ill. 2019); *Wise v. McNeil Pharm.*, No. 99 C 3852, 2000 WL 246243, at *1 (N.D. Ill. Feb. 24, 2000).

The method of service of process is governed by Federal Rules of Civil Procedure 4. *See Strabala*, 318 F.R.D. at 114; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) ("Even though the case is governed by state law, the method of service, in contrast, will be governed by Fed. R. Civ. P. 4"). Rule 4(h) describes the manner for serving a corporation in a foreign country, and Rule 4(f) concerns alternate service. Fed. R. Civ. P. 4.

**II.    Defendant's Motion to Quash and Set Aside Default Judgment**

A defendant is entitled to an order vacating the default entered against it if the court lacks subject matter jurisdiction or personal jurisdiction, or if the defendant received insufficient service of process. *Strabala*, 318 F.R.D. at 89 (citing *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) (a final judgment is void and must be set aside if the court lacked

personal jurisdiction or if the party against whom the judgment was entered was not adequately served); *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995) ("a judgment is void . . . if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law")). But even where the entry of default against a defendant is not void on jurisdictional grounds, we can still vacate it under general "good cause" principles applicable to Rule 55(c) motions. *Id.*; Fed. R. Civ. PP. 55(c). "A party seeking to vacate an entry of default prior to the entry of final judgment must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Strabala*, 318 F.R.D. at 89 (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630 (7th Cir. 2009)).

## ANALYSIS

### I. Defendant's Motion to Dismiss Based on Lack of Personal Jurisdiction

Plaintiff alleges that we have jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. (Compl. ¶ 8.) Plaintiff also pleads that we have both specific and general jurisdiction over Defendant because Defendant has sufficient contacts with Illinois relating to the Wrigleyville Project and otherwise. (*Id.* ¶ 9.) Additionally, Plaintiff alleges that Defendant is bound by the forum selection clause in the Lease, as incorporated by the Guaranty. (*Id.* ¶¶ 3, 36–42.)

In its motion to dismiss, Defendant contends that it is "a Mexican entity with no business activities or presence in Illinois" and that we do not have general or specific jurisdiction over it. (MTD at 1, 3.) First, Defendant argues that it is not subject to general jurisdiction in Illinois because it is not "essentially at home" in Illinois and Plaintiff has not alleged any "continuous

and systematic contacts between Illinois and Grupo Cinemex." (MTD at 10.) Defendant contends that it was formed under the laws of Mexico, does not have its principal place of business in Illinois, does not have any offices, employees, or assets in Illinois, and does not conduct any business in Illinois. (*Id.*) Plaintiff alleges that Defendant "had regular and long-standing interactions with the State of Illinois" because it was the ultimate owner of Illinois movie theaters and purposely availed itself of the benefits and privileges of doing business in Illinois. (Compl. ¶ 9.) Defendant, however, argues that "the business activities of indirect subsidiaries in Illinois are irrelevant and do not create general jurisdiction over Grupo Cinemex." (MTD at 10 (citing *Kolcraft Enters. v. Artsana USA, Inc.*, No. 13 C 4863, 2014 U.S. Dist. LEXIS 107943, at *12 (N.D. Ill. Aug. 6, 2014)).

Further, Defendant argues that it is not subject to specific jurisdiction in Illinois because "there is no connection between Illinois and Grupo Cinemex's alleged breach of the Guaranty." (MTD at 11.) Defendant contends that Plaintiff is alleging that the tenant under the Lease failed to pay rent and rejected the Lease in bankruptcy, but "Grupo Cinemex is not a party to the [L]ease and Plaintiff seeks payment from Grupo Cinemex solely as a guarantor." (*Id.*) Therefore, according to Defendant, its "alleged breach of the Guaranty and Plaintiff's purported right to collect pursuant to the Guaranty do not relate to or arise from any contacts between Grupo Cinemex and Illinois." (*Id.* at 12.)

Defendant does not address the specific terms of its Guaranty, while Plaintiff points out that the Guaranty "fully" and "expressly" incorporates the Lease, including Paragraph 26.9. (Resp. to MTD at 3 (citing Compl., Ex. A (Corrected) at 80–82; Compl. ¶¶ 3, 31.) Paragraph 26.9 of the Lease states that "[t]he laws of the State of Illinois shall govern this Lease and any action brought to enforce this Lease or otherwise arising out of the transactions hereunder shall

be brought exclusively in Cook County, Illinois." (Resp. to MTD at 3; Compl., Ex. A (Corrected) at 40, § 26.9.) Plaintiff argues that the Guaranty, on its face, has "ties to Illinois," as it concerns Illinois real property owned by an Illinois LLC, and because it "absolutely and unconditionally guarantees" the terms of the Lease, including the stipulation that Illinois law and Cook County, Illinois courts would govern disputes arising out of the Lease. (Resp. to MTD at 4, 15; Compl. ¶¶ 3, 32–34.)

We first consider the "threshold question of whether state or federal law governs the validity of forum selection clauses in diversity suits where jurisdiction would otherwise be unobtainable." *Playboy Enters. Int'l, Inc. v. Smartitan (Singapore) PTE Ltd.*, 804 F. Supp. 2d 730, 734 (N.D. Ill. 2011); *see also IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006). We are guided by the Seventh Circuit's approach: "Prudence in this situation counsels us to reserve decision and instead consider how the [issue] would be decided under either view and hope that the result will be the same." *Playboy Enters. Int'l, Inc.*, 804 F. Supp. 2d at 734 (quoting *IFC Credit Corp.*, 437 F.3d at 609); *see also Kamtel, Inc. v. Bore Tech Constr., LLC*, No. 16-cv-633, 2017 WL 532337, at *5 (W.D. Wis. Feb. 9, 2017) (explaining that the Seventh Circuit has "avoid[ed] deciding" whether federal or state law applies to forum selection clauses but concluding that the result in the case at bar was "the same under either standard").

Under federal law, a forum selection clause is treated "like any other contractual provision," and is deemed valid "unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." *Nw. Nat'l Ins. Co. v. Donovan,* 916 F.2d 372, 375 (7th Cir. 1990); *see also Playboy Enters. Int'l, Inc.*, 804 F. Supp. 2d at 734; *TruServ Corp.*, 419 F.3d at 589–90 (defendant was subject to personal jurisdiction in

Illinois, despite minimal contacts, because she executed a personal guaranty agreement with the plaintiff that included a valid forum selection clause); *United Airlines, Inc. v. ALG, Inc.*, 873 F. Supp. 147, 151 (N.D. Ill. 1995) (finding personal jurisdiction because guarantor's "unconditional guarantee of [lessee's] performance under the Sublease" containing a forum clause "obligated it to abide by all of the terms of the Sublease, including the commitment to adjudicate any disputes arising out of in Illinois.").

"Illinois law concerning the validity of forum selection clauses is materially the same as federal law," but, in application, "Illinois law on validity is more lenient toward the defendant than the federal law when there is a significant inequality of size or commercial sophistication between the parties." *IFC,* 437 F.3d at 611.  Still, a forum selection clause is *prima facie* valid and should be enforced unless a party shows that enforcement would be unreasonable and "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Compass Envtl., Inc. v. Polu Kai Servs.,* 379 Ill. App. 3d 549, 554–55, 882 N.E.2d 1149, 1156 (1st Dist. 2008) (quoting *Calanca v. D & S Mfg. Co.,* 157 Ill. App. 3d 85, 87–88, 510 N.E.2d 21, 23 (1st Dist. 1987)).  There is no indication here that Defendant did not freely enter into the Guaranty, or that it was unaware of Paragraph 26.9 of the Lease.  Other than arguing that the Guaranty itself "does not have any ties to Illinois" (MTD at 3), Defendant does not explain why the Guaranty's incorporation of the Lease—and of the Lease's forum-selection clause—should not be enforced, or why Defendant cannot litigate in Illinois, as a practical matter.  Under Illinois state law, the forum selection clause is enforceable.

We conclude that the forum selection clause is valid under both federal and state law.  At this juncture, nothing on the record suggests that Defendant did not freely negotiate and bind itself by the Lease's forum selection clause, as incorporated by the Guaranty.  Forum selection

clauses can serve to waive objections over personal jurisdiction. *See Burger King Corp.*, 471

U.S. at 472 n.14, 105 S. Ct. at 2182 n.14 ("[T]he personal jurisdiction requirement is a waivable

right . . . Where such forum-selection provisions have been obtained through 'freely negotiated'

agreements and are not 'unreasonable and unjust,' . . . their enforcement does not offend due

process" (internal citations omitted)); *see also United Airlines, Inc.*, 873 F. Supp. at 151; *TruServ*

*Corp.*, 419 F.3d at 589–90. Therefore, we need not analyze Defendant's contacts with Illinois,

as we have personal jurisdiction over it by virtue of the enforceable forum selection clause. We

accordingly deny Defendant's motion to dismiss under Rule 12(b)(2).

## II.  Defendant's Motion to Dismiss Based on Improper Service

In moving to dismiss based on improper service, Defendant argues that Plaintiff should

have served it pursuant to the Hague Service Convention[1] because Defendant is a Mexican

corporation with its principal place of business in Mexico. (MTD at 1, 3.) Defendant further

argues that since Plaintiff did not serve it through this mechanism, and only attempted service

through individuals who were not authorized to accept service, service has not been

accomplished. (MTD at 1–2, 5.)

Defendant argues that the Hague Service Convention renders alternative service on its

U.S. counsel ineffective (MTD at 2), while Plaintiff disputes that it is required to comply with

the provisions of the Hague Service Convention (Resp. to MTD at 7–10). According to Plaintiff,

the Hague Service Convention does not apply where service of process is accomplished within

the United States and in accordance with state law and the Due Process Clause. (Resp. to MTD

at 7, 12.) We agree that the Hague Service Convention does not apply to service that is

---

[1] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and
Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.AS. No. 6638, 1969 WL 97765 (the
"Hague Service Convention").

effectuated entirely within the United States, and applies only to "transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707, 108 S. Ct. 2104, 2112 (1988); *see also Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 1:19-cv-02648, 2021 WL 1536173, at *7 (Apr. 19, 2021) ("Plaintiffs need not effectuate service using Hague Convention procedures if they properly effectuate service in the U.S."). "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause," then the Hague Service Convention "has no further implications." *Volkswagenwerk*, 486 U.S. at 707, 108 S. Ct. at 2112. The Hague Service Convention therefore does not apply here, as service was effectuated on Defendant's counsel with appearances on file, who are based in the United States and who were served in the United States. *See Philips Med. Sys. (Cleveland), Inc.*, 2021 WL 1536173, at *7; *Chung v. Tarom, S.A.,* 990 F. Supp. 581, 584 n.2 (N.D. Ill. 1998) (If "service of process is accomplished entirely within the United States in accordance with state law and the Due Process clause…then the service provisions of the Hague Convention do not apply."); *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371, 1376 (D. Or. 2014) ("If service is effected domestically, then the Hague Service Convention does not apply."); *Wissmiller v. Lincoln Trail Motosports, Inc*., 195 Ill. App. 3d 399, 405–06, 552 N.E.2d 295, 299–300 (4th Dist. 1990) (explaining that the Hague Service Convention applies only if process is actually served in a foreign country and does not apply if a foreign corporation's agent is served in the United States).

Indeed, courts have found that the Hague Service Convention does not prohibit service on a foreign defendant through its U.S. counsel. *See, e.g., SEC v. De Nicolas Gutierrez*, No. 17-cv-2068, 2020 WL 1307143, at *2–3 (S.D. Cal. Mar. 19, 2020) (collecting cases); *Nat'l Cas. Co. v. W. Express, Inc*., No. CIV-15-1222, 2017 WL 2241536, at *3 (W.D. Okla. May 22, 2017)

(service on counsel did not contravene the Hague Service Convention because it "does not apply where service was not effected in Mexico"); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) ("Since service is being requested on defense counsel, whose office is located in Richmond, Virginia, the Hague Convention does not apply."); *Calista Enters. Ltd.*, 40 F. Supp. 3d at 1376 (service upon foreign party's domestic attorneys was "least problematic" of the proposed methods of service because "[s]uch service would be complete within the United States and would therefore not trigger the Hague Service Convention," and "such service would give [the party] notice sufficient to satisfy the Due Process Clause"). Additionally, because the Hague Service Convention is inapplicable, Mexico's objection to service by mail under the Hague Service Convention is not a concern here. (*See* Resp. to MTD at 8.)

Plaintiff's argument that service has been accomplished in the United States is bolstered by the fact that it properly moved for alternate service under Rule 4(f)(3), and we granted that motion. (Resp. to MTD at 10-13; Dkt. Nos. 19, 20, 21.) Rule 4(h)(3) states that service on a foreign corporation may be accomplished in any manner prescribed by Rule 4(f), which includes "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(h)(3), 4(f)(3). Although the plain language of Rules 4(h) and 4(f) states that those sections apply to service "at a place not within any judicial district of the United States"—which may suggest that they do not allow for alternate service of a foreign corporation through counsel in the United States—the "relevant circumstance is where the defendant is, and not the location of the intermediary." *In re TK Holdings, Inc.*, No. 17-11375, 2021 WL 954827, at *2 (D. Del. Mar. 8, 2021) (quoting *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8118, 2018 WL 6253877, *4 (S.D.N.Y. Sept. 21, 2018)); *see also Bazarian Int'l Fin. Assoc., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 15 (D.D.C. 2016); *In re Cathode Ray Tube (CRT) Antitrust*

*Litig.*, 27 F. Supp. 3d 1002, 1009–10 (N.D. Cal. 2014). "[W]hen a court orders service on a foreign entity through its counsel in the United States, the attorney functions as a mechanism to transmit the service to its intended recipient abroad." *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries (OPEC)*, 766 F.3d 74, 84 (D.C. Cir. 2014). Therefore, alternative service on a foreign corporation is governed by Rule 4(f)(3), and so it is not mandatory for a plaintiff to serve a foreign corporation under the Hague Service Convention, if the court authorizes another valid method service. *In re TK Holdings, Inc.*, 2021 WL 954827, at *2–4.

Court-directed service pursuant to Rule 4(f)(3) is appropriate under certain circumstances, such as when "there is a need for speed that cannot be met by following the Hague Convention methods." *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (quoting 4B Fed. Prac. & Proc. Civ. § 1134 (4th ed.)). Plaintiff moved for an order pursuant to Rule 4(f)(3) to serve Defendant by alternate means, arguing that (1) Defendant's actions suggest dilatory and evasive intent; (2) the Hague Service Convention process would take an inordinately long time to complete; (3) certain circumstances, including lien-holder actions against Plaintiff and Defendant's financial status, rendered it urgent for the case to proceed quickly; and (4) Plaintiff had already served Defendant through its "involuntary agent for service, CB Theater." (Resp. to MTD at 6; Resp. to Mot. to Quash at 12–14.) "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *Monco v. Zoltek Corp.*, No. 17-cv-6882, 2018 WL 3190817, at *4 (N.D. Ill. Apr. 24, 2018) (quoting *Strabala,* 318 F.R.D. at 114). Alternative service is "neither a 'last resort' nor 'extraordinarily relief,'" but instead "is merely one means among several which enables services of process on an international defendant." *Rio Props. v. Riol Int'l Interlink*, 284

F.3d 1007, 1015 (9th Cir. 2002). Plaintiff was not out of line in filing its motion for alternate service, and our granting of that motion was appropriate. *See Strabala*, 318 F.R.D. at 114–15; *see also Flava Works, Inc. v. Does 1–26*, No. 12 C 5844, 2013 WL 1751468, at *6–7 (N.D. Ill. Apr. 19, 2013) ("In the absence of a directive from the court of appeals, the court finds that Rule 4(f) does not indicate a preference for any method of service"); *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514 (S.D.N.Y. 2013) (concluding that the court "has discretion to authorize alternative service . . . pursuant to Rule 4(f)(3) notwithstanding China's refusal to effect service under the Hague Convention . . . ."); *Rio Props., Inc.,* 284 F.3d at 1015 ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).").

Although Defendant argues that the alternate service was ineffective because the Hague Service Convention is the exclusive means of service and preempts other methods of service (MTD at 6), service pursuant to the Hague Service Convention need not be attempted before alternative service is authorized and effectuated. *Commodity Futures Trading Comm'n v. Caniff*, No. 19-CV-2935, 2020 WL 956302, at *5 (N.D. Ill. Feb. 27, 2020) ("The plain language of [Rule 4(f)] does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3)."); *Strabala*, 318 F.R.D., at 115 n.36 ("*Volkswagenwerk* does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered . . . ." (internal citation omitted)); *Bazarian Int'l Fin. Assocs., LLC,* 168 F. Supp. 3d at 16 (D.D.C. 2016) (holding the plaintiff was "not required to first demonstrate 'a minimum threshold effort to serve Defendants via . . . the Hague Convention'"); *Enovative Techs., LLC v. Leor*, 622 Fed. App'x 212, 214 (4th Cir. 2015) ("Rule 4(f)[(3)] does not denote any hierarchy or preference for one method of service over

another."); *Nuance Commc'ns, Inc. v. Abby Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) ("While Appellees argue that service must have been attempted under the Hague Convention before alternative service methods can be employed, this court disagrees.").

Regardless of the form it takes, service under Rule 4(f)(3) must provide "notice reasonably calculated, under all the circumstances, to apprise [Defendant] of the pendency of the action and afford [it] an opportunity to present [its] objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950); *Bazarian Int'l Fin. Assocs., LLC*, 168 F. Supp. 3d at 15 ("Ultimately, Rule 4(f) is concerned with providing a method of service that is reasonably calculated to 'notify a defendant of the commencement of an action against him'" (internal citations omitted)). Plaintiff claims that it properly served Defendant by serving its U.S. counsel, and that such service was calculated to apprise Defendant of the pendency of the action. (Resp. to MTD at 10–13.) The fact that Defendant learned of this lawsuit shows that Plaintiff's method of service was indeed "reasonably certain" to make Defendant "apprised of the service made," as it did just that. *Flaco v. Nissan N. Am. Inc.*, 987 F. Supp. 2d 1071, 1074 (C.D. Cal. 2013) (internal citations omitted); *Mullane*, 339 U.S. at 314, 70 S. Ct. at 657; *Commodity Futures Trading Comm'n*, 2020 WL 956302, at *6. Serving Defendant's U.S.-based counsel allowed for the realization of the "core function of service," which is "to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672, 116 S. Ct. 1638, 1648 (1996). And although service under Rule 4(f)(3) must "comport[] with constitutional notions of due process," *Strabala*, 318 F.R.D. at 115, the "Due Process Clause does not require an official transmittal of documents abroad every

time there is service on a foreign national." *Volkswagenwerk*, 486 U.S. at 707, 108 S. Ct. at 2112; *see also Monco*, 2018 WL 3190817, at *5.

Defendant's argument that Plaintiff cannot rely upon service on Defendant's U.S.-based counsel because Defendant never authorized service is unpersuasive. (MTD at 7 n.3.) We authorized the alternative service, and no specific authorization from Defendant is necessary to make our Order effective. *See, e.g.*, *Bazarian Int'l Fin. Assocs., LLC*, 168 F. Supp. 3d at 15–17 (explaining that the court could direct service on U.S. counsel without requiring a specific authorization by the defendant for the recipient to accept service on its behalf) (collecting cases)); *Calista Enters. Ltd.*, 40 F. Supp. 3d at 1376 ("Following the reasoning of *Volkswagenwerk*, several federal courts have authorized service under Rule 4(f)(3) on domestic counsel as involuntary agents for their clients abroad."). Courts have allowed service upon a foreign defendant's U.S. counsel to prevent further delays in litigation, and, in fact, "[s]ervice upon a foreign defendant's United States-based counsel is a common form of service under Rule 4(f)(3)." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. CV 0902047, 2015 WL 13387769, at *5 (E.D. La. Nov. 9, 2015). We conclude that serving Defendant's U.S. counsel here was proper and sufficient.

Plaintiff also provided proof of service that supports that service has been accomplished, as the summons served on Defendant's counsel was returned executed and entered on the docket. (Dkt. No. 22); Fed. R. Civ. P. 4(l)(2)(B) (service under Rule 4(f)(3) must by proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee"). A "signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by strong and convincing evidence." *Strabala*, 318 F.R.D. at 116 (quoting *Homer v. Jones–Bey*, 415 F.3d 748, 752 (7th

Cir. 2005)).  "Once such a *prima facie* showing is made, the burden shifts to the defendant to demonstrate that service was not received."  *Id.*  Defendant has not attempted to meet that shifted burden here.

For all the reasons stated above, Defendant's motion to dismiss under Rule 12(b)(5) for improper service is denied.

### III.    Defendant's Motion to Quash and Set Aside Default Judgment

Because, as described above, Plaintiff properly effectuated alternative service that we authorized, we deny Defendant's motion to quash service of process.  However, we grant Defendant's motion to set aside the default judgment.

"Rule 55(c)'s 'good cause' standard is a lenient one that does not depend on there being a good excuse for the defendant's failure to appear in a timely manner."  *Strabala*, 318 F.R.D. at 91.  Instead, "Rule 55(c) requires 'good cause' for the judicial action, not 'good cause' for the defendant's error."  *Id.* (quoting *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007)).  Thus, "[d]amages disproportionate to the wrong afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case."  *Id.*  We find good cause to excuse Defendant's delay in responding to the Complaint, given the relatively complicated situation of the Lease, its Guaranty, and international service.  Refusal to do so would result in "damages disproportionate to the wrong" for a number of reasons.

First and foremost, the delay caused by Defendant's default did not prejudice Plaintiff by impinging upon its ability to pursue the litigation.  *Strabala*, 318 F.R.D. at 91*; see, e.g., Fed. Trade Comm'n v. Construct Data Publishers*, No. 13-cv-01999, 2014 WL 7004999, at *6 (N.D. Ill. Dec. 11, 2014) ("[T]he disproportionate size of the default judgment—$9.1 million—in comparison with the minimal prejudice suffered by the [plaintiff] represents good cause to vacate

the default judgment").  In addition, "[t]his Circuit has a well established policy favoring a trial on the merits over a default judgment."  *Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 811 (7th Cir. 2007) (citing *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)); *Strabala*, 318 F.R.D. at 91.  "For that reason, a default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing."  *Sun*, 473 F.3d at 811 (7th Cir. 2007) (citing *C.K.S. Eng'rs, Inc.*, 726 F.2d at 1205); *Strabala*, 318 F.R.D. at 91.

When we entered default judgment against Defendant on January 25, 2021, we directed that it could file a motion to reconsider within 30 days.  (Dkt. No. 9.)  Defendant filed its motion to quash service of process and to set aside the default judgment well before that deadline, on February 15, 2021.  (Mot. to Quash.)  Defendant then acted diligently in following our briefing schedules for the motion to quash and the motion to dismiss and otherwise participated in this litigation in good faith.  Thus, Defendant has shown that it is committed to actively defending itself.  *See Strabala*, 318 F.R.D. at 91.  Given our preference for deciding cases on the merits and the lack of prejudice to Plaintiff, we conclude that we have good cause to overlook Defendant's initial lapse.  *See id.* at 91–92.  Accordingly, we grant Defendant's motion to set aside the default judgment.

**CONCLUSION**

For the foregoing reasons, we deny Defendant Grupo Cinemex, S.A. de C.V.'s motion to dismiss (Dkt. No. 24), deny its motion to quash service of process (Dkt. No. 16), and grant its motion to set aside the default judgment (Dkt. No. 16). It is so ordered.

Honorable Marvin E. Aspen
United States District Judge

Dated: May 26, 2021
Chicago, Illinois